GEORGE W. ROWAN

*v.*

FRANK L. YARNALL et al.

[Decided July 14th, 1911.]

1. Upon complainant's application to direct a new trial on an issue at law framed and tried in the court designated, with the result that the validity of the complainant's claim was negatived by the verdict of the jury in proceedings had under the statute entitled "An act to compel the determination of claims to real estate in certain cases, and to quiet the title to the same" (*P. L. 1870 p. 20; 3 Gen. Stat. p. 3486*), where such application was rested upon the ground that the verdict was against the evidence, and also because of alleged trial errors committed by the law court—*Held,* that the verdict must be set aside and a new trial had, after examination and consideration of such alleged trial errors as well as of the evidence reported to this court by the law court.

2. The issue at law must be as broad as the application, and put to the test of the suit at law the validity of the entire claim of the defendant, and not a part thereof only.

On bill, &c.   On motion for a new trial.

*Messrs. Collins & Corbin,* solicitors of the complainant, for the motion.

*Mr. John P. Lloyd, Mr. Frank P. McDermott* and *Mr. George S. Silzer,* solicitors of the defendants, *contra.*

GARRISON, V. C.

George W. Rowan, the complainant, filed his bill invoking the jurisdiction of this court under the "Act to compel the determination of claims to real estate in certain cases and to quiet title to the same," approved March 2d, 1870 (*Gen. Stat. p. 3486*), and claimed therein that he was in peaceable possession of the premises in question, and that Frank L. Yarnall, Elric L. Moore and Nella Moore, his wife, made some claim thereto, and he prayed

this court to settle and determine the title with respect to the lands aforesaid.

The said defendants just named answered, and in such answer set out their respective claims, and in said answer the defendants, all of them, stated that since the filing of the bill of complaint they had made a *bona fide* sale of all of their right, title and interest in the said lands for a valuable consideration to the Cliffwood Brick Company, a corporation of New Jersey, and by subsequent proceedings the Cliffwood Brick Company was made a party defendant herein.

A hearing was had before this court, at which the complainant introduced testimony to show that he was in peaceable possession of the lands in question, and the defendants did not produce any evidence, whereupon the court found in favor of the complainant that he had shown sufficient to enable him to maintain this suit. Whereupon the defendant the Cliffwood Brick Company made application under the fifth section of the act before cited for an issue at law to try the validity of the claim of the said defendant, and thereupon an order or decree was entered herein, and by an order supplemental thereto the issue at law was framed. It was in form an action of ejectment with the Cliffwood Brick Company as plaintiff and George W. Rowan as defendant.

That issue was tried at the Middlesex circuit of the supreme court, and the result of that trial has been certified to this court, and this is a hearing upon a motion on behalf of the defendant in the feigned issue (the complainant in this suit) for a new trial.

The duty of this court, under the circumstances, has recently received consideration in the court of errors and appeals in the case of *McAndrews & Forbes Co.* v. *City of Camden, 78 N. J. Eq. (8 Buch.) 244,* and it is therein held that it is the function of the court of chancery "to consider alleged trial errors as well as the evidence reported to it by the law court for the purpose of determining whether the erroneous rulings (if they appeared) were such as to destroy the value of the verdict as a means of satisfying the conscience of the chancellor."

No intelligible discussion of the matter is possible without a preliminary statement of facts.

David Noble Rowan at one time owned all of the land in question, together with much more in the immediate vicinity. In 1874 he caused a map to be made and filed which showed various plots or "subdivisions," as they were termed, which were designated by numbers, and on the map were colored various different colors.

Among such lots or subdivisions were those in controversy in this suit, namely, 45, 46, 47, 48 and the easterly two hundred and fifty feet of 49. It is these lots which the defendant George W. Rowan claimed to own, and which the defendant the Cliffwood Brick Company also claimed to own, and which were the subject-matter of this suit, and the title to which was the subject-matter of the feigned issue tried at law.

All of the evidence taken at the trial of the issue at law, together with the rulings of the judge, and his charge to the jury, have been returned by him with his certificate to this court, together with a *postea* in which is recited the verdict.

The Cliffwood Brick Company, the plaintiff in the law suit, the defendant here, claimed paper title to each of the subdivisions or lots above enumerated, and the defendant George W. Rowan, who is the complainant here, claimed paper title to 47 and 48. He did not claim paper title to 45 and 46, but with respect to 45 and 46, as well as 47, 48 and the easterly two hundred and fifty feet of 49, claims, for more than twenty years, to have been in open, notorious, visible, hostile possession.

Failing to find paper title in the Cliffwood Brick Company for the easterly two hundred and fifty feet of lot 49, the judge instructed a verdict for the defendant in the law suit, the complainant here, with respect to that, and left to the jury to determine whether, as against the paper title of the plaintiff, Cliffwood Brick Company, with respect to lots 45, 46, 47 and 48, the defendant had made out a title by adverse possession; and the jury found that he had not, and thereupon the verdict was for the plaintiff in the law suit, the defendant herein, with respect to lots 45, 46, 47 and 48, and for the defendant in the law suit, the complainant here, for the easterly two hundred and fifty feet of lot 49.

This motion for a new trial is made by the defendant in the law suit, the complainant here.

He sets out numerous reasons why the verdict should not be allowed to stand, and why there should be a new trial. Before treating the different questions raised separately, it will be useful to make a preliminary general statement. As has been before stated, David Noble Rowan, in 1874, filed a map in which all of this land, together with other land, was plotted. There were something over three hundred acres in the entire tract. Various parts of it were used as a farm, as a brickyard, as a summer home, as meadow land upon which salt hay was grown and cut, and part was used by fishermen. The particular part thereof, with which we are concerned, was nearly a half a mile from the mansion-house or large residence on the premises, and was entirely uncultivated, and was not the part that was either farmed, used as a summer home or as a brickyard. A portion of the land in controversy was that from which the salt hay was cut and where the fishing was done. It is a peninsula running out into the waters, on the one side of Raritan bay, and on the other of Stump and Cheesequake creeks, and is almost triangular in shape. At the broad base of the triangle are lots 45 and 46. Immediately above them are Nos. 47 and 48—47 lying above 45 and 48 above 46. From there out to the end was lot 49; but we are only concerned with the two hundred and fifty feet of 49 which bound lots 47 and 48.

In 1875 David Noble Rowan and Margaret H., his wife, conveyed practically the whole of the tract to Thomas W. Moore, taking mortgages made by Moore for the purchase price, and from that time on there are numerous conveyances from Thomas W. Moore to his son Elric L. Moore, and from Elric L. Moore to Margaret H. Rowan, or to David Noble Rowan as trustee for Margaret H. Rowan. It is apparently the contention of the complainant here, the defendant in the law suit, that the transaction between David Noble Rowan and Thomas W. Moore was not a straight sale of the land, but was a conveyance from David Noble Rowan to Thomas W. Moore for the purpose of obtaining negotiable mortgages made by Moore for the use of Rowan, and that Rowan never transferred possession to Moore, but either he or his wife, or, later, his son, the complainant, have always remained in possession of all of the land in controversy.

It is the effect to be given to these various conveyances and to the testimony as to adverse possession that is the subject of controversy in this suit. For convenience it will be now well to deal separately with each of the tracts that properly belong together for the purposes of this consideration.

*With respect to lots 45 and 46:*

These lots were among those which were conveyed by David Noble Rowan and Margaret H., his wife, to Thomas W. Moore by the deed dated the 1st of January, 1875. On the 17th of February, 1876, Thomas W. Moore and Fannie N., his wife, conveyed all that they had received by the deed just mentioned to Elric L. Moore, thus vesting title in the latter to lots 45 and 46. On the first day of February, 1905, Elric L. Moore and Nella, his wife, signed a deed to Frank L. Yarnall. This paper contains this recital:

"That the said party of the first part, in consideration of the sum of one dollar and other valuable considerations to us duly paid before the delivery hereof, hath remised, released and forever quitclaimed, and by these presents doth· remise, release and ·forever quitclaim to the said party of the second part and to his heirs and assigns all that certain tract   *   *   *."

In the description of the property it is stated to be that "known as part of lot 4 as laid down upon a map" in a certain partition suit, and also on the David N. Rowan map of 1874, "and more particularly described in a deed from David Noble Rowan to Thomas W. Moore, February 4th, 1875, recorded in book 151, pages 447, 456." Also

"all the estate, right, title, interest, property, claim and demand whatsoever of the said party of the first part of, in and to every part and parcel thereof, with the appurtenances, and all the estate, right, title and interest of the said party of the first part therein, to have and to hold the above-mentioned and described premises, with the appurtenances, unto the said party of the second part, heirs and assigns forever. In witness whereof the said party of the first part have hereunto set their hands and seal the day and year first above written. Signed, sealed and delivered in the presence of G. Schmalstick,"

and signed "Elric L. Moore, Nella Moore," without any seals, scrolls or other indications of a seal. The acknowledgment was taken before the witness just named, who was a notary public

of New York, and recites that on a day therein mentioned before him

"personally appeared Elric L. Moore, who I am satisfied is the grantor mentioned * * * and thereupon he acknowledged, &c., and the said Nella Moore, being by me privately examined, separate and .apart from her husband, acknowledged that she signed, sealed and delivered the same," &c.

It is objected on behalf of the complainant, the defendant in the law suit, that this deed does not contain such a description of the premises in question as to be effective to convey. It is conceded that the only part of the description which serves to give information as to the land intended to be.conveyed with sufficient distinctness to identify it, is that which refers to the deed from David Noble Rowan to Thomas W. Moore, February 4th, 1875, recorded in book 151, pages 447, 456. In book 151 of deeds of Middlesex county, at page 447, there is no deed of the character described. At page 456 there is a deed from David Noble Rowan to Thomas W. Moore, dated January 1st, 1875. But I cannot find from an inspection of that deed that I can pick out any land "known as part of lot 4 as laid down upon a map made by the commissioner appointed * * * for dividing the real estate of James Provost," &c. The deed under review, it will be recalled, describes the land conveyed in the manner just set forth, and then says that it is more particularly described in the deed from Rowan to Moore, dated February 4th, 1875, and recorded in book 151, pages 447, 456. Furthermore, there is no deed, even at page 456, between those parties dated February 4th, 1875. The date of the deed which was there found, which is above referred to, is January 1st, 1875. This latter point, I think, is an immaterial detail.

I concede, as argued by the counsel for the Cliffwood Brick Company, that the courts should seize upon any proper information contained in papers and records which will enable them to give effect to a conveyance, and that if by the use of such proper means it can be ascertained what the parties intended, that course should be followed. In the instance under consideration, however, this principle will not help to sustain the deed as a conveyance, because even by assuming that the reference to the deed

from Rowan to Moore is read so as to contain the correct date and the correct page of record, you cannot, by referring to that deed, determine what land is conveyed by the deed under review.

The Rowan-Moore deed contains a very long description, and I have read it carefully to see whether I can gather therefrom any information as to what land therein described could properly be said to be "known as part of lot 4 as laid down," &c. As has just been stated, the deed under review conveys land "known as part of lot 4," &c., and says that it is more particularly described in the Rowan-Moore deed. I cannot tell from the Rowan-Moore deed whether any part of that land was ever known as part of lot 4, and if so, which part thereof was so known; and therefore I cannot say that I can determine by this description in the deed from Moore and wife to Yarnall what land was intended.

Counsel did not debate, and I shall not do more than call attention to the fact that this deed from Moore and wife to Yarnall is—first, a quitclaim deed, and second, contains no seals, and third, has a defective acknowledgment.

I do not think, therefore, that the plaintiff in the law suit, who, of course, must succeed by the strength of his own title, can properly claim to have shown paper title to lots 45 and 46, so far as the claim rests upon the deed just referred to.

The effect of this finding is that the paper title to 45 and 46, at the time of the commencement of the suit in equity, was unquestionably in Elric L. Moore; and he, as will be recalled, was one of the defendants in this suit. And it appears from the proofs that on the 18th day of September, 1906, he and his wife made a deed to the Cliffwood Brick Company which, by a description that is not questioned, conveyed, *inter alia,* lots 45 and 46.

The bill in this suit was filed about the 5th of July, 1906, and the answer of Yarnall and of Elric L. Moore and wife about the 5th of October, 1906; and it will be recalled that in said answer it was stated that the defendants had sold all of their rights to all of the lands in question and conveyed the same to the Cliffwood Brick Company, and that the Cliffwood Brick Company subsequently was made defendant.

I am clearly of opinion that the claim of paper title on behalf of Elric L. Moore, as against George W. Rowan, was, at the time of the filing of the bill herein, a good claim, and I see no reason why the Cliffwood Brick Company may not obtain the benefit thereof by claiming either in the right of Moore as of the date of the filing of the bill, or in their own right as of the date of the deed to them, which preceded in date the framing of the issue at law.

Since it is entirely clear to my mind that the paper title at the time of the framing of the issue at law was either in the defendant Elric L. Moore or in the defendant the Cliffwood Brick Company, they must be found to be entitled to a determination in their favor, unless the claim of the defendant in the law suit, the complainant herein, is justified and proven that he has title as against them by reason of adverse possession. This issue of adverse possession was left to the jury, and it found in favor of the Cliffwood Brick Company, the plaintiff in the law suit, and against Rowan, the defendant in the law suit and the complainant here. The latter complains that the verdict was against the weight of the evidence; but I shall not pass upon this, because, as hereinafter set forth, I find that a new trial of the issue is required, and it is unnecessary for me therefore to deal with this question.

*With respect to lots 47 and 48:*

There is no dispute that the title to these lots, prior to February, 1876, was in Thomas W. Moore. On the 17th day of February, 1876, he and his wife made a deed to Elric L. Moore, and on the 14th day of April, 1881, Thomas W. Moore and his wife and Elric L. Moore and his wife made a deed to Margaret H. Rowan, wife of David Noble Rowan. This deed was acknowledged on the 23d day of April, 1881, and was recorded on the 23d of October, 1888. No conveyance effective to transfer the title out of Margaret H. Rowan is shown until a deed of Margaret H. Rowan and of David Noble Rowan, individually, and as trustee for Margaret H. Rowan, was made to George W. Rowan on the 22d day of April, 1896, acknowledged on the same day and recorded on the 2d of July, 1906. The result of this inspection of the muniments of title is that the paper title

at the time of the commencement of this suit in equity was vested in George W. Rowan, so far as lots 47 and 48 are concerned.

I do not understand that the defendant the Cliffwood Brick Company disputes this. Its position is that because of the happenings at the trial at law, and the failure to take exceptions or make other legal objection thereat, the finding thereat that the Cliffwood Brick Company had paper title must rest undisturbed. They contend that at the trial the respective claims were as follows:

### *Cliffwood Brick Co. Claim.*

Thomas W. Moore and wife to Elric L. Moore. Deed dated February 17th, 1876; acknowledged February 19th, 1876; recorded February 23d, 1876, book 158, page 292.

Elric L. Moore and wife to Frank L. Yarnall. Deed dated February 1st, 1905; acknowledged February 2d, 1905; recorded February 3d, 1905, book 364, page 597.

Elric L. Moore and wife, George W. Moore and wife, John N. Moore and wife, Fred. M. Moore and wife, Henry P. Moore and wife, Thos. W. Moore and wife, to Frank L. Yarnall. Deed dated June 30th, 1905; acknowledged, recorded January 26, 1906, book 375, page 528.

Frank L. Yarnall, Elric L. Moore and wife to Cliffwood Brick Co. Deed dated September 18th, 1906; acknowledged September 18th, 1906; recorded September 20th, 1906, book 386-454.

### *Rowan's Claim.*

Thos. W. Moore and Fanny N. Moore to Elric L. Moore. Deed dated February 17th, 1876; acknowledged February 19th, 1876; recorded February 23d, 1876, book 158, page 292.

Thos. W. Moore, Fanny N., his wife; Elric L. Moore and Maud S., his wife, to Margaret H. Rowan, wife of D. N. Rowan. Deed dated April 14th, 1881; acknowledged April 23d, 1881; recorded October 23d, 1888, book 220-456.

Marg. H. Rowan, Elric L. Moore and Maud S., his wife, to Thomas W. Moore. Deed dated January 2d, 1885; acknowledged February 23d, 1885; recorded April 8th, 1885, book 203, page 50.

Thos. W. Moore to D. N. Rowan, trustee for' Marg. H. Rowan. Deed dated January 3d, 1885; acknowledged March 28th, 1897; recorded July 2d, 1906, book 383, page 395.

Marg. H. Rowan, widow and as wife of D. N. Rowan; D. N. Rowan, individually, and as trustee Marg. H. Rowan, to Geo. W. Rowan. Deed dated April 22d, 1896; acknowledged April 22d, 1896; recorded July 2d, 1906, book 383-397.

And that the mooted question at the trial was whether paper title did not pass to the Cliffwood Brick Company because the deed from Elric L. Moore and wife, and the other Moores and their wives, dated June 30th, 1905, acknowledged the same day, and recorded on the 26th of January, 1906, was so made and recorded before the deed from Thomas W. Moore to D. N. Rowan, trustee for Margaret H. Rowan, was recorded. This latter deed was recorded on the 2d of July, 1906.

It will, of course, be observed that this contention rests upon the theory that Yarnall was a *bona fide* purchaser for value without notice from the heirs of Thomas W. Moore, who was dead, and that, by recording his deed before the deed made by Thomas W. Moore in his lifetime to David N. Rowan, trustee for Margaret H. Rowan, was recorded, he, Yarnall, obtained the paper title and transferred it by the deed which he subsequently made to the Cliffwood Brick Company.

It is the contention of the Cliffwood Brick Company that in the trial at common law the counsel for Rowan not only did not claim that the deed from Margaret H. Rowan and Elric L. Moore and his wife, dated January 2d, 1885, was void because her husband did not join in it (*Gen. Stat. p. 2015 § 14*), but, on the contrary, asserted its validity and claimed through it. And it now contends that having thus done, George W. Rowan may not now, on the application for a new trial, take any other position.

Before dealing with this question, I think it proper to state that, with respect to the claim of the Cliffwood Brick Company of paper title under the conveyances above set out, counsel for Rowan contends—first, that the answer filed in the cause does not assert that the deed from the heirs-at-law of Thomas W. Moore, deceased, vested title, but, on the contrary, sets out a different claim; and also, that under the pleadings no issue was raised that Yarnall was a *bona fide* purchaser for value without notice of said unrecorded deed. He further contends that even if these alleged defects in the pleadings are overlooked, the court would first have to determine whether section 54 of the Conveyancing act (*P. L. 1898 p. 690*) extends to a purchase from heirs of a grantor whose deed was not recorded at the time

of such purchase; and, although there are cases upon each side, he concedes that the better opinion is in favor of the extension of the statute to such a case. He then argues that no attempt was made to show that Yarnall was a *bona fide* purchaser for value without notice of the unrecorded deed, excepting in so far as it is proven by the admission in evidence of the deed of Yarnall which recited that it was given "in consideration of the sum of one dollar, lawful money of the United States of America, and other good and valuable considerations."

He next argues that even if it be found that the recital of consideration is sufficient to constitute Yarnall a *bona fide* purchaser for value, it cannot, under the circumstances of this case, be said to have been proven that he was such without notice. He points out and argues that Thomas W. Moore was not, nor were any of his children, ever in possession of the property described in the deed. He argues that those under whom he claims, namely, the Rowans, were in possession of the premises; and he contends that even if Yarnall were a *bona fide* purchaser for value, he had, by reason of the occupancy of the Rowans, notice of their title under the unrecorded deed; and he further points out that Yarnall's grantors were not proven to be the legal successors in title of Thomas W. Moore; the deed does not recite that they conveyed as heirs-at-law, which might, at least, presume intestacy, but they conveyed as individuals; and Elric L. Moore testified that he believed his father, Thomas W. Moore, had left a will, and that it had been admitted to probate in Kings county, New York.

At the trial at law the judge there found and charged the jury that the plaintiff, Cliffwood Brick Company, had a paper title to lots 45, 46, 47 and 48. He apparently found—because he does not leave it to the jury and treats it as if it were settled—that Yarnall, the predecessor in holding such paper title, was a *bona fide* purchaser for value; and he leaves to the jury the question of whether the Rowans were in such possession or occupancy as to give notice thereby of their unrecorded deed to Yarnall; and upon this issue the jury found against Rowan and in favor of the Cliffwood Brick Company.

There are several very nice questions of law which arise, but, in view of my determination of what I should do upon this application, I do not find it necessary or proper to discuss them.

It is true that the counsel for Rowan did not, at the trial at law, point out to the judge that the deed made by Margaret H. Rowan without her husband joining was void, and that the effect of this was to deprive the Cliffwood Brick Company of any basis for a claim to have paper title, and to vest paper title unquestionably in George W. Rowan. And it is therefore true that whatever error was made was a common error, joined in by all of those involved, counsel on both sides and the court. It is, however, a fact that by the twenty-fourth request to charge, which had application to the forty-seventh and forty-eighth subdivisions or lots, the court was asked to charge the jury that they must render a verdict in favor of the defendant as to said subdivisions, and it now appears clearly to me that such should have been the charge under the proofs then submitted to the court. At the conclusion of the plaintiff's case, there was a motion to nonsuit, on the ground "that the plaintiff had not shown title to the premises in question." From the colloquy, it clearly appears that this particular point was not brought to the judge's attention; but, here again it is true, as a matter of law at that time, that the plaintiff in the law suit had not shown any paper title with respect to lots 47 and 48, and that it was only by treating the void deed as valid that there was a semblance of such title.

It is true that counsel for Rowan did not call the court's attention to the invalidity of the deed made by the married woman in which her husband did not join, and, in fact, himself treated that paper-writing as if it were a valid conveyance; but it seems clear to me that by this oversight or error he did not cure, in behalf of the plaintiff in the law suit, nor deprive himself of asserting in his own behalf, the patent, obvious defect in the title claimed and set up by the plaintiff in the law suit. And, when, therefore, he moved for a nonsuit and subsequently requested the judge to charge the jury that, as to these subdivisions, the jury must find in favor of the defendant, his request was a proper one; and although he did not advance to the judge

the proper theory, or did not advance what now appears to have been the incontestable facts, he, nevertheless, made proper motions or requests upon each occasion, and the incontestable facts as they now appear should have resulted in their being granted.

Furthermore, I am inclined to think that upon this application for a new trial, in which the defendant in the law suit, the complainant herein, urges that the verdict was against the weight of the evidence, results in a similar finding.

The only evidence on this point consists of the deeds, and, as it now appears from considering such evidence, the paper title unquestionably was in the defendant in the law suit with respect to lots 47 and 48; and the verdict which places title in the plaintiff in the law suit is therefore clearly against the weight of the evidence.

I am of opinion, therefore, that this verdict must be set aside, and that there must be a new trial.

*With respect to lot 49:*

It will be recalled, with respect to this lot, that the judge at the trial at law withdrew the same from the consideration of the jury and instructed them to find for the defendant in the law suit, the complainant here. The plaintiff in the law suit, the defendant here, argues in his brief that this was an error. It has not applied for a new trial, but argues that the judge, in the suit at law, was in error in instructing the jury in favor of the defendant in the law suit with respect to this lot.

It is conceded by all parties that the title to this land was at one time in Elric L. Moore. It was contended at the trial by the plaintiff in the law suit, the Cliffwood Brick Company, that it had obtained title by a conveyance from Elric L. Moore and wife to Frank L. Yarnall by the deed dated February 1st, 1905, which deed, as will be recalled, has been heretofore dealt with in this opinion. It is also proven that this land is specifically described in the deed from Frank L. Yarnall and Elric L. Moore and wife to the Cliffwood Brick Company, dated September 18th, 1906, acknowledged the same day and recorded on the 20th of September, 1906. Apparently, the law judge determined that this lot was not conveyed by the deed from Elric L. Moore and wife to Frank L. Yarnall, because the description

in that deed is too indefinite to be effective to convey any land; and he did not find paper title in the Cliffwood Brick Company, because its deed was after the commencement of this suit. The court, therefore, found that the Cliffwood Brick Company had no title to the part of lot 49 claimed.

The defendant in the law suit did not pretend to have any paper title to 49, but relied, if attacked, upon adverse possession or the right to hold the same as mortgagee in possession. It seems to me that the issue which should have been left to the jury is this: Ignoring entirely the deed from Elric L. Moore and wife to Frank L. Yarnall, dated February 1st, 1905 (the one containing the inefficient description), it would appear from the other proofs that Elric L. Moore, at the time of the commencement of this suit, had paper title to this portion of 49; and that he and his wife were parties defendant, and that by a subsequent conveyance (subsequent, that is, to the date of the filing of the bill) they conveyed all their rights to the Cliffwood Brick Company. The result of this chain of title it seems to me to be that at the time that the jury was considering the matter they should find that Elric L. Moore or the Cliffwood Brick Company (and it is immaterial which) had the paper title, and that they should prevail unless the defendant Rowan in the law suit should make out, as against them, title by adverse possession or a right to hold the same as mortgagee in possession. Upon a retrial, of course, this matter can be correctly shaped and put to the jury.

The defendant the Cliffwood Brick Company has suggested in its brief that if the court should be satisfied with the finding of the common law court with respect to certain of the questions affecting some of the subdivisions, and dissatisfied as to others (that is, should find reason for setting the verdict aside and ordering a new trial), it might, with propriety, define only certain portions to be retried. I do not know of any such practice, and, in any event, I do not think it proper in this case. Under the act in question (*Gen. Stat. p. 3487* § *5*) : "Upon application of either party an issue at law shall be directed to try the validity of such claim," and this court is then given power, if it finds reasons for doing so, to grant a new trial of the issue at

law. I have found reasons for granting a new trial, and the case is therefore before me upon the bill, answer, replication, certain proofs which show the complainant in peaceable possession sufficient to justify the suit and an application for a trial of the validity of the claim of the defendant, and I know of no right that I have other than to grant such application and direct the issue at law, which must certainly be as broad as the application, and that is to put to the test of the suit at law the validity of the entire claim of the defendant.

Furthermore, and even assuming that this court might do otherwise, if it were so inclined, I am not so inclined, and my reasons, briefly, are these: The transcript of the minutes of the common law trial cover more than four hundred and fifty pages, and almost the whole of it is taken up with testimony about the possession of this property. I have found it almost impossible to determine from a reading of the testimony upon what specific portion of the different lots, or upon what lots certain of the acts of possession took place. If I were now to attempt to do what the defendant here desires me to do, and to take the finding of the jury in its favor upon the question of adverse possession, I might be committing a very grave injustice, because if the case is submitted to the jury in such a way that the different titles are separated, it may well be that acts of possession of the Rowans on the property may be found to have been committed upon that portion to which it is now found that they have paper title; or it may be that it would be found that such acts of possession were upon other portions of the tract to which they did not have paper title; and similarly with respect to the acts of those whose conduct is said to have interrupted or broken the possession of the Rowans, such acts may have been upon land the title to which should have been found to be by record in the Rowans or in the defendant; and the effect of these findings as to where the acts of possession were committed has a very direct bearing upon the proper solution of the issues.

I shall, therefore, grant a new trial, the order for which may be settled upon notice.